686 A.2d 828

**COMMONWEALTH of Pennsylvania**

**v.**

**Joseph KESHANECK, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 14, 1996.

Filed Dec. 16, 1996.

F. Paul Laubner, Allentown, for appellant.

Eric K. Dowdle, Assistant District Attorney, Bethlehem, for Com., appellee.

Before CIRILLO, President Judge Emeritus, and DEL SOLE and OLSZEWSKI, JJ.

OLSZEWSKI, Judge.

In what manner must a municipality post signs restricting the use of a highway or bridge? Appellant Joseph Keshaneck believes that our state legislature's clear and direct charge on this matter answers the question. The trial court, on the other hand, believes that "reasonable compliance" with the legislature's directive is sufficient. We agree with Keshaneck.

By March of 1995, after years of heavy use and neglect, the Union Boulevard bridge crossing the Monocacy Creek in Bethlehem, Pennsylvania, had severe structural problems. In response to the disrepair, the City of Bethlehem placed a twenty-ton weight restriction on the bridge. Five bridge restriction signs were placed at the intersection of Union Boulevard and the Moravian Mile, which is the intersection to the east of the bridge. One sign was placed between the intersection and the bridge. This lone sign stood 279 feet away from the bridge and no sign was positioned at the west end of the bridge.

On August 6, 1995, Keshaneck crossed the restricted bridge from the east in a three-axle Mack truck. Officer Dale Kemmerer, of the Bethlehem Police Department, stopped Keshaneck after witnessing the crossing. The lawman then

escorted Keshaneck to the city dump where the officer, who is a certified weighmaster, weighed the truck. After determining that the truck weighed 52,940 pounds, Officer Kemmerer charged Keshaneck with violating restrictions on the use of a bridge, 75 Pa.C.S.A. § 4902. Keshaneck was subsequently found guilty, after a *de novo* hearing in the Court of Common Pleas of Northampton County, and fined $3,150.00. This appeal follows.

There is no question that the City of Bethlehem was within its rights in placing a weight restriction upon the Union Boulevard bridge. 75 Pa.C.S.A. § 4902(a) reads as follows:

**(a) Restrictions based on condition of highway or bridge.** The Commonwealth and local authorities with respect to highways and bridges under their jurisdictions may prohibit the operation of vehicles and may impose restrictions as to the weight or size of vehicles operated upon a highway or bridge whenever they determine that the highway or bridge may be damaged or destroyed unless use by vehicles is prohibited or the permissible size or weight of vehicles is reduced....

Nevertheless, in so placing the restriction, the City of Bethlehem was required to follow certain stringent requirements for notifying the public. 75 Pa.C.S.A. § 4902(e) mandates the following:

**(e) Erection of signs.** *The Commonwealth and local authorities shall erect or cause to be erected and maintained restriction signs designating the restrictions at each end of a bridge or portion of highway restricted as provided in subsections (a) or (b).* In the case of a restriction on a bridge or highway which does not begin or end at an intersection with an unrestricted highway, the Commonwealth or local authority shall also place an advance informational sign at the intersection nearest each end of the restricted bridge or portion of highway which would allow drivers to avoid the restricted bridge or portion of highway. *No person shall be convicted of violating subsection (a) or (b) unless the restriction sign designating the restricted bridge or portion of highway to traffic moving in the*

*direction the person was driving was posted as required in this subsection.* However, failure to post the restriction sign designating the restricted bridge or portion of highway to traffic moving in the opposite direction or failure to post any advance informational sign shall not constitute a defense to violation of this section.

Instantly, the trial court acknowledges that restriction signs were only posted "en route" to the bridge, but, nevertheless, found Keshaneck guilty of violating 75 Pa.C.S.A. § 4902 because the City of Bethlehem "was in reasonable compliance" with the law. Opinion, 7/16/96 at 1; N.T., 3/27/96 at 61. The trial court's decision was clearly in error.

The language of § 4092(e) is unambiguous: warning signs must be placed at the end of a restricted bridge and, in the absence of such placement, no person can be held culpable for violating the restriction.[1] Pennsylvania's Rules of Statutory Construction state that "[e]very statute shall be construed, if possible, to give effect to all of its provision." 1 Pa.C.S.A. § 1921(a). Additionally, and more importantly, "[w]hen the words of the statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b).[2]

**1.** The trial court attempts to defend its decision by stating that

"[t]he use of the term 'end of [the] bridge' does not require that the sign must be placed at that point at which the bridge's structure begins. The term 'end of [the] bridge' means at each direction from which traffic may enter the bridge."

Opinion, 7/16/96 at 3. The trial court's position on this matter is untenable. Taken to its logical extension, under the trial court's approach, Keshaneck violated § 4902 the instant he passed the Moravian Mile intersection even though his wheels never touched the actual bridge. We reject this approach and remind the trial court that it is presumed that "the General Assembly does not intend a result that is absurd." 1 Pa.C.S.A. § 1922(1).

**2.** The trial court also fails in its attempt to define the purpose behind § 4902. The trial court concluded, without citing to any authority, that "[t]he purpose of the signage requirements listed in § 4902(e) are [sic] to insure that drivers are given sufficient space in which to detour or turn around instead of crossing a restricted bridge." Opinion, 7/16/96 at 3. While this may no doubt be *a* purpose behind placing restriction signs, we cannot help but conclude that the legislature was also concerned with identifying exactly where the restrictions begin and

The laws of our Commonwealth are made in the state capital of Harrisburg. Accordingly, there is no question that, instantly, the trial court erred in not following the express provisions of § 4902(e).

Our disposition of this case is in no way an endorsement of Keshaneck's actions. In crossing a structurally unsound bridge with such a weighty load, he unjustifiably placed himself and his fellow motorists in jeopardy. From the signs that were posted, the trucker should have known that the City of Bethlehem intended to prohibit heavily loaded trucks from crossing the bridge. Keshaneck was merely fortunate in that the city failed to properly place warning signs. Hopefully, this case will serve to alert the City of Bethlehem, as well as all of our state's municipalities, of the strict mandates of § 4902(e). Our state's highways and bridges need the protection and our state's motorists deserve the peace of mind.

Judgment of sentence vacated. Jurisdiction relinquished.

end. By requiring that signs be placed at the ends of a restricted bridge or portion of highway, the citizenry is notified as to exactly what stretch of roadway is off limits.